**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.

Case No. 3:16-cr-48-J-34JBT

REGINALD FULLWOOD
     a/ka Reggie Fullwood
_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant Fullwood's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 46; Motion), filed on August 19, 2016. In the Motion, Defendant Reginald Fullwood requests that the Court dismiss Counts 1 through 10 of the Indictment which charge Fullwood with committing wire fraud in violation of 18 U.S.C. § 1343. See Motion at 1. The government filed a response in opposition to the Motion on September 12, 2016. See United States' Response to Defendant Fullwood's Motion to Dismiss (Doc. No. 46) (Doc. 47; Response). The Court announced its intended ruling at a hearing on September 19, 2016, the record of which is incorporated herein by reference. See Minute Entry (Doc. 49). As indicated at the hearing, the Court now enters this written order with its findings.

**I.    Procedural History**

On April 15, 2016, the government returned a fourteen-count Indictment charging Fullwood with several counts of wire fraud in violation of 18 U.S.C. § 1343, among other

things. See generally Indictment (Doc. 1).[1] Generally, the Indictment alleges that Fullwood knowingly participated in a scheme to defraud in which he solicited donations for the "Reggie Fullwood Campaign" to support his election and reelection to the Florida House of Representatives, but later transferred funds from his campaign account into a separate bank account, and used those funds on personal expenses. See Indictment at 4-5. According to the Indictment, Fullwood avoided detection by submitting false campaign expenditure reports to the State of Florida which included inflated and/or non-existent campaign expenses. Id. at 5. On April 15, 2016, Fullwood entered a plea of not guilty as to all charges. See Minute Entry (Doc. 7).

Wire fraud occurs when "'a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or causes the use of the . . . wires for the purpose of executing the scheme or artifice.'" See United States v. Bradley, 644 F.3d 1213, 1238 (11th Cir. 2011) (quoting United States v. Ward, 486 F.3d 1212, 1222 (11th Cir. 2007)). On May 9, 2016, Fullwood filed Defendant Fullwood's Motion for Bill of Particulars (Doc. 19; Motion for Bill of Particulars) seeking the identity of the person or entity deprived of funds by virtue of the alleged scheme to defraud. See Motion for Bill of Particulars at 2-3. In the United States' Response In Opposition to Defendant's Motion for Bill of Particulars (Doc. 20; Response to Motion for Bill), filed on May 10, 2016, the government appeared to suggest that Fullwood's campaign account was the entity that was defrauded. See Response to Motion for Bill at 4. On May 17, 2016, the Magistrate Judge conducted a hearing on the Motion for Bill of Particulars, see Minute Entry (Doc.

---

[1] Counts 11 through 14 of the Indictment charge Fullwood with failure to file an income tax return in violation of 26 U.S.C. § 7203. Fullwood does not challenge these charges, and the Court will not address them in the instant Order.

22), at which the government explained its theory to be that both the campaign account and the campaign contributors were the victims of the alleged fraud. See May 17, 2016 Motion Hearing Transcript (Doc. 26) at 11.

However, in responding to the Magistrate Judge's Order (Doc. 23) granting Defendant's Motion for Bill of Particulars, the government took the position that the objects of the scheme to defraud were the campaign contributors and the Florida Department of State Division of Elections (Florida DOE). See United States' Response to Court's Order (Doc. 23) Regarding Defendant's Motion for Bill of Particulars (Doc. 25) at 2. Thereafter, Fullwood challenged the classification of the Florida DOE as a victim, see Defendant Fullwood's Amended Motion in Limine (Doc. 29), and following a lengthy discussion with counsel at a July 19, 2016 hearing, see Minute Entry (Doc. 38), the government agreed that the sole victims of the scheme or artifice to defraud alleged in the Indictment were the campaign contributors. See Order (Doc. 39), entered July 21, 2016. As such, the Court ordered that absent evidence of any pecuniary loss to the State of Florida, the government could not and would not argue that the State of Florida was an independent legal victim of the scheme to defraud. Id.

Having narrowed the government's theory of the case, Fullwood now moves to dismiss the Indictment pursuant to Rule 12(b)(3)(B)(v), Federal Rules of Criminal Procedure (Rule(s)), on the theory that the Indictment fails to state an offense. See Motion at 1-2. Fullwood contends that "the campaign contributors had no property interest that was threatened by [Fullwood's] conduct as alleged by the Government, and, as a matter of law, there is no victim and therefore no wire fraud." Id. at 5. The government responds that the Indictment sufficiently alleges the elements of wire fraud in that it describes a

scheme to defraud wherein Fullwood deprived campaign donors of their money in the form of campaign contributions by misrepresenting the purpose of those donations. See Response at 7-8. According to the government, the fact that a campaign donor has no property interest in their money after making the donation is irrelevant in that "the proper inquiry is whether the victim was defrauded into losing his property." Id. at 8. The government maintains that "in assessing the viability of the government's theory, this Court should assess whether [Fullwood] defrauded contributors into giving money at all." Id.

## II.    Standard of Review

Under Rule 7(c)(1), Federal Rules of Criminal Procedure (Rule(s)), an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" The Eleventh Circuit Court of Appeals has articulated a three part test to determine the sufficiency of an indictment:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

United States v. Steele, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal citation and quotation omitted). An indictment is generally sufficient "if it sets forth the offense in the words of the statute." Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Adkinson, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment need do little more than track the language of the statute). Indeed, the Eleventh Circuit has explained that an indictment that tracks the language of the statute is sufficient "as long as the language sets forth the essential elements of the crime." United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983). However, an indictment that follows the statute is

nevertheless insufficient if it fails to sufficiently apprise the defendant of the charged offense.  United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006).  Thus, if an indictment tracks the language of the criminal statute, it must include enough facts and circumstances to inform the defendant of the specific offense being charged.  United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003).  This is necessary "not only to give the defendant notice as guaranteed by the [S]ixth [A]mendment, but also to inform the court of the facts alleged to enable it to determine whether the facts are sufficient in law to support a conviction."  See Belt v. United States, 868 F.2d 1208, 1211 (11th Cir. 1989).  An indictment does not, however, have to "allege in detail the factual proof that will be relied upon to support the charges."  United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978).[2]

Additionally,

> [i]n ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes.  It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.

Sharpe, 438 F.3d at 1263 (internal citation and quotation omitted).

### III.  Applicable Law

As stated above, wire fraud occurs when "'a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or causes the use of the . . . wires for the purpose of executing the scheme or artifice.'"  See Bradley, 644 F.3d at 1238 (citation omitted).[3]  To establish a "scheme or artifice to defraud," the

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[3] Because "[m]ail and wire fraud are analytically identical save for the method of execution," Bradley, 644 F.3d at 1238 (footnotes omitted), the Court relies on authority pertaining to both mail and wire fraud in its analysis here.

government must offer proof of "'a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property.'" Id. (quoting United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009)).  Although the mail and wire fraud statutes do not define the meaning of "defraud," the Supreme Court has explained that "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" See McNally v. United States, 483 U.S. 350, 358 (1987) (citation omitted) superseded by 18 U.S.C. § 1346.  As such, the mail and wire fraud statutes require "the object of the fraud to be 'property' in the victim's hands . . . ."  See Cleveland v. United States, 531 U.S. 12, 26 (2000).[4]

The Eleventh Circuit recently addressed the meaning of "defraud" in context of the wire fraud statute and emphasized the importance of distinguishing between schemes to "defraud," which violate the statute, and schemes only to "deceive," which do not.  See United States v. Takhalov, 827 F.3d 1307, 2016 WL 3683456, at *1-5 (11th Cir. July 11, 2016).  The Takhalov Court explained:

> there is a difference between deceiving and defrauding: to defraud, one must intend to use deception to cause some injury; but one can deceive without intending to harm at all.  Thus, deceiving is a necessary condition of defrauding but not a sufficient one.  Put another way, one who defrauds always deceives, but one can deceive without defrauding.
>
> For this reason, the law in the Eleventh Circuit makes clear that a defendant 'schemes to defraud' only if he schemes to "depriv[e] [someone] of something of value by trick, deceit, chicane, or overreaching."  But if a defendant does not intend to harm the victim—"to obtain, by deceptive means, something to which [the defendant] is not entitled"—then he has not intended to defraud the victim.

---

[4] This case does not involve 18 U.S.C. § 1346 which allows a more expansive interpretation of the rights protected by including the intangible right to honest services.  See United States v. Shoss, 523 F. App'x 713, 717 n.3 (11th Cir. 2013).

6

Id. at *3 (alterations in original) (citations omitted).  Critically, "a 'scheme to defraud,' as that phrase is used in the wire-fraud statute, refers only to those schemes in which a defendant lies about the nature of the bargain itself," for example, where a defendant lies about the price of a good, or lies about the characteristics of the good.  Id. at *4. Succinctly stated, "'schemes that depend for their completion on a misrepresentation of an essential element of the bargain . . . violate the mail and wire fraud statutes,'" whereas "'schemes that do no more than cause their victims to enter into transactions that they would otherwise avoid . . . do not . . . .'"  Id. (quoting United States v. Shellef, 507 F.3d 82, 108 (2d Cir. 2007))).

Additionally, "[p]roof of intent to defraud is necessary to support convictions for mail and wire fraud."  Bradley, 644 F.3d at 1239.  The Eleventh Circuit instructs that "[t]o gauge a defendant's intent to commit a fraudulent scheme," one "must determine whether the defendant attempted to obtain, by deceptive means, something to which he was not entitled."  Id. at 1240.  Stated another way, "in order to sustain a mail fraud conviction, the government must establish that the defendant intended to defraud a victim of money or property of some value."  See United States v. Cooper, 132 F.3d 1400, 1404-05 (11th Cir. 1998).  However, the government need not show that the defendant "'contemplated harm to a specific, identifiable victim,'" or ever personally interacted with an intended victim.  See United States v. Munoz, 430 F.3d 1357, 1369 (11th Cir. 2005) (quoting United States v. Henningsen, 387 F.3d 585, 590 (7th Cir. 2004)).

**IV. Discussion**

In his Motion, Fullwood first argues that the alleged fraud did not injure any property interest of the campaign contributors because the contributors had no property interest in

7

the funds contained in the campaign account. See Motion at 6-8. According to Fullwood, the campaign account was not a "trust" account and he had no "fiduciary relationship" with the contributors, such that "once given, the contributor [lost] any property interest or control over the disposition of those funds." See id. at 7-8. As a result, the purported misuse of campaign funds could not defraud a contributor of any property interest "because he ha[d] none." Id. at 8. Although the Court does not necessarily disagree with that proposition, the argument is nonetheless unavailing because it relies on a theory of the offense that is different than what the government is charging. The Indictment does not allege that Fullwood owed any fiduciary duty to the contributors, or that the funds in the campaign account were held in trust. See generally Response. The government's theory of fraud is not limited to Fullwood's actions after the donations were made, but rather, is premised on the idea that Fullwood fraudulently obtained the donations in the first place. Indeed, the government specifically alleged in the Indictment that Fullwood's solicitation of money "for the stated purpose of supporting his election and reelection" was part of the scheme to defraud. See Indictment at 4. Because the government does not contend that the contributors retained a property interest in the money held in the campaign account, the Court need not address the arguments for dismissal premised on that concept any further.[5]

Anticipating the government's position, Fullwood next addresses "the theory that the fraudulent intent was present when the contribution was solicited or received," see Motion at 9, and offers two arguments in support of dismissal. First, Fullwood contends that this

---

[5] In addition, Fullwood attempts to characterize this case as an improper form of "honest services fraud." See Motion at 9. The government has repeatedly denied that it seeks to prosecute Fullwood on the theory of "honest services" fraud, see Response at 8-9, and that is not the statute cited in the Indictment. Because the deprivation of money in the hands of the campaign contributors is the object of the fraud, the Court rejects Fullwood's "honest services" argument.

8

theory is not charged in the Indictment because "there is no allegation that [Fullwood] 'falsely' or 'fraudulently' solicited contributions or received them knowing that he intended to divert some part of them to personal use." See Motion at 10. This argument is unavailing. Under the heading "Scheme and Artifice," the Indictment charges that Fullwood "did knowingly and willfully devise and participate in, and intend to devise and participate in, a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises." See Indictment at 3-4. The Indictment elsewhere states that Fullwood executed the scheme using wires in interstate commerce. Id. at 5. These allegations are sufficient to state the essential elements of wire fraud. See United States v. Shoss, 523 F. App'x 713, 717 (11th Cir. 2013).

In addition, under the heading "Manner and Means," the Indictment further alleges that it was "part of the scheme and artifice to defraud" for Fullwood to solicit individuals and entities to contribute money to his campaign for the purpose of supporting his election and reelection to the Florida House of Representatives. See Indictment at 4 (emphasis added). While the Indictment does not specifically allege that Fullwood solicited the donations "knowing that he intended to divert some part of them to personal use," see Motion at 10, "[l]inguistic precision is not required in an indictment . . . . Instead, an indictment may be short and simple—its allegations are sufficient if they include all elements of the offense and briefly describe the facts of the commission of the offense." United States v. deVegter, 198 F.3d 1324, 1330 (11th Cir. 1999). Taken together, these allegations are sufficient to apprise Fullwood that the charged scheme to defraud includes the contention that he knowingly and intentionally obtained money through false pretenses and representations

9

by virtue of the campaign solicitations.  See Bobo, 344 F.3d at 1083; deVegter, 198 F.3d at 1330; United States v. London, 550 F.2d 206, 211 (5th Cir. 1977) ("The test is not whether the indictment might have been drawn with greater certainty and exactitude, but rather whether it set forth the elements of the offense charged and sufficiently apprised defendants of the charges."); see also United States v. Kelly, No. 1:13-cr-108-WSD-JSA, 2014 WL 1153375, at *13 (N.D. Ga. Mar. 21, 2014).  Moreover, reviewing the Indictment as a whole, the isolated use of the word embezzle to describe Fullwood's actions in taking the funds from the campaign account does not change the Court's assessment.  See United States v. Seher, 562 F.3d 1344, 1356 (11th Cir. 2009) ("As a general rule, 'practical, rather than technical, considerations govern the validity of an indictment.'" (quoting United States v. Hooshmand, 931 F.2d 725, 735 (11th Cir. 1991))); London, 550 F.2d at 211 ("The validity of the indictment must be determined by practical, not technical, considerations.").[6]

Second, Fullwood argues that even accepting the theory that he intentionally deceived contributors at the time he solicited their donations, such allegations are nonetheless insufficient to state a charge of wire fraud because there was no "intended loss" within the meaning of a "scheme to defraud."  See Motion at 13.  According to Fullwood, a campaign contributor "knew exactly how much money he or she was contributing and to whom the money was being given" and thus, regardless of how the money was later used, the contributor received the "benefit of the bargain."  Id. at 13-14.  In this regard, Fullwood focuses on the contention that the contributors did not expect to

---

[6] Notably, where an indictment sufficiently charges all the essential elements of an offense, "but fails to inform the accused with sufficient particularity of the charges against which he will have to defend at the trial, the remedy is to move for a bill of particulars." See Cefalu v. United States, 234 F.2d 522, 524 (10th Cir. 1956). In this case, Fullwood has done precisely that and as described above, has obtained substantial clarification of the government's theory of the offense.

10

receive any tangible benefit from their donation.  Id. at 13, 16-18.  Although unclear, Fullwood's argument appears to be that because the contributors did not expect to receive anything of value in return for their contributions they either received the "benefit of the bargain," or there was no "bargain" involving property at all and thus, no impacted property interest.  Because there can be no wire fraud in the absence of an injury to a property interest, Fullwood reasons that the Court must dismiss the Indictment.  The Court disagrees.

The Court's analysis of the charges in this case is informed by the persuasive reasoning set forth in United States v. Henningsen, 387 F.3d 585 (7th Cir. 2004) and United States v. Reed, No. 15-100, 2015 WL 5944333 (E.D. La. Oct. 13, 2015).  In Henningsen, the Seventh Circuit found sufficient evidence to uphold a mail fraud conviction where a candidate for election diverted campaign funds to his private use.  See Henningsen, 387 F.3d at 589-90.  The defendant argued that no false representations were made because all he promised donors was that he would run for re-election.  Id. at 589.  However, the Seventh Circuit rejected this argument in light of "ample evidence that [defendant] represented one thing to donors, but did another."  Id. at 589.  Specifically, the evidence showed that defendant solicited donations to support his re-election campaign, diverted donations for his private use, and failed to fully disclose campaign revenue and expenditures in campaign finance reports to state authorities.  See id. at 589-90.  According to the Henningsen court, "[a] rational jury could have easily determined on these facts that [defendant's] solicitation of campaign funds for private use was dishonest, and that it influenced donors' decisions to contribute."  Id.  In addition, the court found sufficient evidence to permit the jury to find an intent to defraud where the defendant concealed his

personal use of campaign funds and reported "wildly inaccurate" campaign account balances to the public. Id. at 590-91. The Court has not heard the evidence and has no opinion on whether the government will be able to prove the requisite contributor deception and fraudulent intent in this case, but for purposes of determining whether the allegations in the Indictment charge a crime, Henningsen is persuasive authority that the purported solicitation of campaign funds for personal use can constitute the offense of wire fraud.[7]

Likewise, in United States v. Reed, No. 15-100, 2015 WL 5944333, at *1, 5-7 (E.D. La. Oct. 13, 2015), the court denied a motion to dismiss an indictment charging wire fraud based on a defendant's improper personal use of campaign funds. As in Henningsen, the defendant argued that he had not obtained money based on false representations because he had not made any promises regarding how the campaign funds would be spent. See Reed, 2015 WL 5944333, at *6. The court reasoned that "while [defendant] may not have specified exactly how campaign contributions were spent, campaign contributors did not expect their contributions to be used for personal expenses as such personal expenditures are in violation of Louisiana's campaign finance laws." Id. Indeed, even absent state laws, the court found that "campaign contributors would have had certain expectations regarding how their donations would be spent," just as donors to a charity have an expectation that their funds will be used to support the charitable cause. Id. The Reed court also rejected the defendant's argument that "the campaign contributors had no property interest in the funds at issue at the time of the alleged scheme . . . ." Id. at *7. The court found no

---

[7] Of course, to violate the wire fraud statute, the scheme must involve the use of the wires, see Bradley, 644 F.3d at 1238, but that aspect of the alleged offense is not challenged here, and as such, the Court need not address it at this time.

requirement that the ill-gotten money "must be in the hands of the defrauded party at the time it is spent . . . ." Id.  The court explained that:

> Campaign contributors undoubtedly relinquish some control over their money at the time it is donated. Nonetheless, taking the allegations in the Indictment as true, [defendant] made representations to potential donors about the purpose of the contributions he solicited, solicited contributions based on those representations, and then spent the money in contravention of those representations. Thus, while the donors may not have control as to whether their money is used on a television advertisement or a fundraising dinner, they were deceived into parting with something of value to them on the basis that, at the very least, their money would be used to fund a reelection campaign and they were not so used. That alleged misconduct is sufficient to satisfy the "scheme to defraud" element under 18 U.S.C. § 1343.

Id.; but see United States v. Pisani, 773 F.2d 397, 411 (2d Cir. 1985) (questioning whether the government could support the conviction on the theory that defendant engaged in a scheme to defraud the campaign contributors [as opposed to the campaign committee,] where "there is scant evidence to establish that contributors entertained the expectations attributed to them by the government," and noting that four donors testified that "they did not care whether [defendant] used [their contributions] for political or personal purposes"). Here, the Indictment charges that Fullwood solicited funds from entities and individuals "for the stated purpose of supporting his election and reelection," wired those funds from the campaign account to a different account for his personal use, and then concealed the misuse of funds by submitting false campaign reports to the State of Florida.  See Indictment (Doc. 1) at 4-5.  The Indictment alleges that Fullwood devised and participated in this scheme knowingly and willfully, and with intent to defraud.  Id. at 3-4.  Based on Henningsen and Reed, these allegations state a viable scheme to defraud within the meaning of the wire fraud statute.

Fullwood attempts to undermine the Indictment by characterizing this case as one involving mere deception designed to induce the target into the transaction. See Motion at 16-18 (citing United States v. Starr, 816 F.2d 94 (2d Cir. 1987)). Indeed, in Takhalov, the Eleventh Circuit held that a scheme where "a defendant merely 'induce[d] [the victim] to enter into [a] transaction' that he otherwise would have avoided," does not violate the wire fraud statute. See Takhalov, 2016 WL 3683456, at *1 (quoting Starr, 816 F.2d at 98). As such, Fullwood maintains that it is insufficient to allege that he induced the contributors into the transaction by misleading them about his use of the funds, because such deception does not involve the "benefit of the bargain" and therefore, cannot constitute a "scheme to defraud." In support, Fullwood relies on the decision in Starr in which the Second Circuit overturned a mail fraud conviction of defendants who provided shipping services to their customers, misappropriated a portion of the postage fees paid by the customers, but tricked the post office into mailing the items anyway. See Starr, 816 F.2d at 95-96, 99. The court found no scheme to defraud the customers because the "customers received exactly what they paid for, there was no discrepancy between benefits 'reasonably anticipated' and actual benefits received." Id. at 99. The Starr court reasoned that the misuse of funds did not "affect the nature or quality of the services that was the basis of the customers' bargain" in that "[t]he misappropriation of funds simply has no relevance to the object of the contract; namely, the delivery of mail to the appropriate destination in a timely fashion." Id. at 99-100.

However, this case is distinguishable from Starr and Takhalov because in this context, as opposed to the purchase of a good or service, a contributor's expectation about how his donation will be used does go to the essence of the bargain itself. See United

14

States v. Schwartz, 924 F.2d 410, 420-21 (2d Cir. 1991).  Whereas the basis of the contract in Starr was the provision of shipping services such that "[t]he misappropriation of funds simply ha[d] no relevance to the object of the contract," see Starr, 816 F.2d at 100, the basis of the bargain here, at least as alleged in the Indictment, is that the donated money would be used for a particular purpose.  If the money was not used for the purpose anticipated by the contributor, then Fullwood did not fulfill his end of the bargain, just as if a seller had not delivered the purchased good or promised service.  At a minimum, the specific representations made to contributors and their expectations regarding how their donations would be used are factual issues that should be developed at trial.  The Court cannot say as a matter of law that a misrepresentation regarding how donated funds are to be used does not concern the "nature of the bargain" within the meaning of the wire fraud statute.  See Takhalov, 2016 WL 3683456, at *4 ("[A] 'scheme to defraud,' as that phrase is used in the wire-fraud statute, refers only to those schemes in which a defendant lies about the nature of the bargain itself.").[8]  While the government may be unable to prove that Fullwood had a fraudulent intent at the time of the solicitation, or that the contributors were deceived about how the funds would be used, such factual disputes are to be resolved at trial, not on a Motion to Dismiss the Indictment.  See United States v. Baxter, 579 F. App'x 703, 705 (11th Cir. 2014) ("A district court may not dismiss an indictment based on a determination of facts that should have been developed at trial."); United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("The sufficiency of a criminal indictment is

---

[8] Fullwood contends that "[i]n the real world, it is highly unlikely [compliance with Florida election law] was a part of any contributors [sic] thought process in deciding to contribute to a campaign." See Motion at 17. Fullwood adds that "[c]ontributors do not 'bargain' for strict compliance with the election code or even that the Defendant would not use some portion of the campaign money for personal expense." Id. at 18.  The government disagrees, but regardless, the expectations of the contributors are plainly factual questions that must be resolved at trial and inappropriate for resolution on a Motion to Dismiss the Indictment.

determined from its face.  The indictment is sufficient if it charges in the language of the statute."). In light of the foregoing, the Court concludes that the Indictment sufficiently alleges wire fraud, and as such, the Motion is due to be denied. Accordingly, it is

**ORDERED**:

Defendant Fullwood's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 46) is **DENIED.**

**DONE AND ORDERED** in Jacksonville, Florida, this 20th day of September, 2016.

*MARCIA MORALES HOWARD*
United States District Judge

lc11
Copies to:

Counsel of Record